UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **LEROY BARTLETTE**, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 13-cv-1640 (TSC) |
| ) | |
| **HYATT REGENCY**, ) | |
| ) | |
| Defendant. ) | |
| ) | |

## MEMORANDUM OPINION

Plaintiff Leroy Bartlette was employed by the defendant Hyatt Regency ("Hyatt") for over twenty years before his termination.  He alleges that he suffered discrimination during his employment and that he was terminated for discriminatory reasons.  Before the Court is Hyatt's Motion to Dismiss.  ("Motion")  (ECF No. 13).  For the reasons set forth below, the Court will GRANT the motion in part and DENY the motion in part.

## A.  FACTUAL BACKGROUND

Bartlette was employed as an Assistant Server in a restaurant located in the Washington, D.C. Hyatt Regency Hotel.  In May 2000, he had surgery on his back that left him disabled, though able to work with accommodations.  On September 14, 2011, Hyatt terminated Bartlette.  (ECF No. 27, Pls. Verified Suppl. Notice ¶ 1).  He subsequently filed a charge of discrimination with the EEOC, which issued a notice of right to sue from its Indianapolis, Indiana office on Monday July 22, 2013.  (ECF No. 13, Defs. Ex. B).  Bartlette claims that he received the notice seven days later, on Monday July 29, 2013, at his home in Silver Spring, Maryland.  (ECF No.

20, Pls. Notice. of Filing at Ex. B).  Less than 90 days after receiving the letter, on October 25,

2013, he filed this lawsuit, naming Hyatt as the defendant in the case caption.  However, the

body of the Complaint contains only one reference to Hyatt and to Bartlette, in the introductory

paragraph:

> Plaintiff Leroy Bartlette, by and through counsel, C. Sukari Hardnett and the Law
> Office of C. Sukari Hardnett, brings this civil action against Defendant Hyatt
> Regency, on the grounds and in the amounts set forth herein.

(Compl. at p. 1).  The remainder of the Complaint involves parties and factual allegations

unrelated to Bartlette or his employment with Hyatt.  Specifically, the Complaint deals with

plaintiff Leona Adams and defendant Community Development Institute Head Start ("CDI").

(*Id*. ¶¶ 1-2).  The factual allegations center around Adams's claims that, as Director of Family

Services, she attempted to bring CDI into compliance with certain Head Start Regulations, and

that CDI wrongfully discharged her as a result of her actions.[1]

On October 28, 2013, three days after Bartlette filed his original complaint, he filed a

document that he described on the court's Case Management/Electronic Case Files docketing

system as a "Notice of Correct Complaint." (ECF No. 2) (hereinafter "Corrected Complaint").

The document is titled "Complaint" and contains claims and factual allegations involving Hyatt.

According to the preliminary statement and the counts in the Corrected Complaint, Bartlette

appears to assert that Hyatt discriminated against him in violation of:  (1) Title VII (retaliation

and race based disparate treatment and hostile environment),[2] 28 U.S.C. § 2000(e); (2) the Age

---

[1]  This court's records indicate that Bartlette's attorney filed a lawsuit on behalf of Leona Adams
against CDI in 2009.  *See Adams v. Cmty. Dev. Inst. Head Start*, 9-cv-579-RBW.

[2] (Corrected Compl. ¶¶ 38, 44, 51; *id*. at p. 1).

Page 2 of 26

Discrimination in Employment Act  ("ADEA") (disparate treatment, retaliation, hostile work environment),[3] 29 U.S.C. § 621 *et seq*.; and (3) the Americans With Disabilities Act ("ADA") (retaliation, hostile work environment, and failure to accommodate)[4], 42 U.S.C. § 12101, *et seq*. Bartlette also asserts what appears to be a District of Columbia common law claim for "Wrongful Termination" in violation of public policy.[5]  Additionally, the Corrected Complaint contains oblique references to the Fair Labor Standards Act ("FLSA"),[6] 29 U.S.C. § 201 and, in one paragraph, he cites to the Title VII provision that provides relief for disparate impact claims.[7]

Hyatt moves for dismissal of the this action, pursuant to Federal Rule of Civil Procedure 12(b)(5), because Bartlette failed to serve the Corrected Complaint within 120 days after filing this lawsuit, as required by then Federal Rule of Civil Procedure 4(m).  Hyatt also seeks dismissal on the grounds that the filing of the Corrected Complaint was untimely, that Bartlette

---

[3] (Corrected Compl. ¶¶ 45, 51; *see id*. 42; *see id*. at p. 15 intro paragraph to Count V).

[4] (Corrected Compl. at pp. 1-2, 15; *id*. ¶¶ 11, 51).

[5] (Corrected Compl. ¶¶ 30-37).

[6] (Corrected Compl at pp. 1, 17).

[7] (Corrected Compl. ¶ 43); *see* 42 U.S.C. § 2000e-2(k) ("An unlawful employment practice based on disparate impact is established under this subchapter only if-- (i) a complaining party demonstrates that a respondent uses a particular employment practice that causes a disparate impact on the basis of race, color, religion, sex, or national origin and the respondent fails to demonstrate that the challenged practice is job related for the position in question and consistent with business necessity; or (ii) the complaining party makes the demonstration described in subparagraph (C) [relating to labor organization practices] with respect to an alternative employment practice and the respondent refuses to adopt such alternative employment practice.").

has not set forth a *prima facie* case to support his claims, and that he failed to exhaust his

administrative remedies.  *See* Fed. R. Civ. P. 12(b)(6) (allowing for dismissal where the

complaint fails "to state a claim for which relief may be granted.").  Alternatively, Hyatt seeks

summary judgment pursuant to Federal Rule of Civil Procedure 56.  (ECF No. 13, Defs. Br. at p.

2 n.1).

## B.  LEGAL STANDARDS

### 1.   Motions to Dismiss pursuant to Rule 12(b)(5).

When a defendant moves to dismiss the complaint under Federal Rule of Civil Procedure

12(b)(5) for insufficient service of process, "the party on whose behalf service is made has the

burden of establishing its validity when challenged; to do so, he must demonstrate that the

procedure employed satisfied the requirements of the relevant portions [of the Federal Rules] and

any other applicable provision of law [regarding service of process]."  *Light v. Wolf*, 816 F.2d

746, 751 (D.C. Cir. 1987) (internal quotations omitted).  Under the version of Federal Rule of

Civil Procedure 4 in effect during the relevant time period, a plaintiff must serve the complaint

and summons within 120 days after filing the complaint.  Fed. R. Civ. P. 4(m). [8]

### 2.   Motions to Dismiss pursuant to Rule 12(b)(6)

"A Rule 12(b)(6) motion tests the legal sufficiency of a complaint."  *Browning v.*

*Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002).  "To survive a motion to dismiss, a complaint must

contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its

face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678, (2009) (internal quotation marks and citation

---

[8] While the most recent version of the Federal Rules of Civil Procedure requires service of
process within 90 days after the complaint is filed, the version in effect at the time Bartlette filed
the current lawsuit required service within 120 days.  *See* Fed. R. Civ. P. 4(m).

omitted).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for

more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citation omitted).

Although a plaintiff may survive a Rule 12(b)(6) motion even where "recovery is very remote

and unlikely," the facts alleged in the complaint "must be enough to raise a right to relief above

the speculative level."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007) (internal

quotation marks and citation omitted).  Moreover, a pleading must offer more than "labels and

conclusions" or a "formulaic recitation of the elements of a cause of action." *Iqbal*, 556 U.S. at

678 (quoting *Twombly,* 550 U.S. at 555).  If the facts as alleged, which must be taken as true,

fail to establish that a plaintiff has stated a claim upon which relief can be granted, the Rule

12(b)(6) motion must be granted.  *See, e.g., Am. Chemistry Council, Inc. v. U.S. Dep't of Health

& Human Servs.*, 922 F. Supp. 2d 56, 61 (D.D.C. 2013); *Clay v. Howard Univ.*, 82 F. Supp. 3d

426, 430 (D.D.C. 2015).

### 3.  Motions for Summary Judgment Pursuant to Rule 56

When a party moves to dismiss under Rule 12 for failure to state a claim upon which

relief may be granted and presents matters outside the pleading and not excluded by the court,

"the motion shall be treated as one for summary judgment and disposed of as provided in Rule

56." *Colbert v. Potter*, 471 F.3d 158, 167 (D.C. Cir. 2006) (alterations omitted).  Summary

judgment is appropriate "if the movant shows that there is no genuine dispute as to any material

fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a). [9]

---

[9]  Because both parties have relied on "matters outside the pleadings" to support their arguments
on the timeliness issue, the court will evaluate this issue under the summary judgment standard.
*See* Fed. R. Civ. P. 12(d); Fed. R. Civ. P. 56; *Colbert v. Potter*, 471 F.3d 158, 167-68 (D.C. Cir.
2006) (upholding district court's failure to issue prior notice that it was converting a motion to

To defeat summary judgment, the nonmoving party must "designate specific facts showing there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, (1986) (internal quotation marks omitted).  A dispute is "genuine" only if a reasonable fact-finder could find for the nonmoving party; a fact is only "material" if it is capable of affecting the outcome of the litigation.  *Id.*; *see also Laningham v. U.S. Navy*, 813 F.2d 1236, 1241 (D.C. Cir. 1987).  In assessing a party's motion, "[a]ll underlying facts and inferences are analyzed in the light most favorable to the nonmoving party."  *N.S. ex rel. Stein v. District of Columbia*, 709 F. Supp. 2d 57, 65 (D.D.C. 2010) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986)).

## C. ANALYSIS

### 1. Timeliness of the Corrected Complaint [10]

Hyatt first seeks summary judgment on the grounds that Bartlette's lawsuit is untimely.

Pursuant to Title VII of the Civil Rights Act, a plaintiff must file suit "within ninety days after

---

dismiss to a motion for summary judgment where: (1) the defendant moved for summary judgment in the alternative; (2) the defendant attached extra-pleading material to the motion; and (3) the plaintiff responded with exhibits);  *Smith v. Lynch*, 106 F. Supp. 3d 20, 36-37 n.20 (D.D.C. 2015).

Unlike the timeliness issue, resolution of Hyatt's remaining arguments require review of only one document—the EEOC charge.  Accordingly, the court will evaluate the remaining arguments under the Rule 12 standard.  *See Hudson v. Children's Nat'l Med. Ctr.*, 645 F. Supp. 2d 1, 5 n.5 (D.D.C. 2009) (where the plaintiff references an EEO document in the complaint, the court may consider the EEO document without converting the defendant's motion to dismiss into a motion for summary judgment) (citations omitted); (Corrected Compl. at p. 2).

[10]  Hyatt initially sought dismissal of this case on timeliness grounds, arguing that Bartlette failed to submit his EEOC charge within 300 days of the last alleged discriminatory act.  *See* 42 U.S.C. § 2000e-5(e)(1) (Title VII); 42 U.S.C. § 12117 (ADA); 29 U.S.C. § 626(d)(1)(B) (ADEA).  After the court requested and obtained further briefing and evidentiary submissions, (ECF Nos. 26-28), Hyatt withdrew its challenge to the timeliness of Bartlette's EEOC charge.  (ECF No. 28, Defs. Suppl. Br. at p. 1 n.1).

obtaining notice of right to sue from the EEOC." *Dougherty v. Barry*, 869 F.2d 605, 609 (D.C.

Cir. 1989) (citing 42 U.S.C. § 2000e-5(f)(1)).  These same deadlines apply to ADEA and ADA

cases.  *See* 29 U.S.C. § 626(e); 42 U.S.C. § 12117(a).

There is a rebuttable presumption that a claimant received her right to sue letter within

three to five days after mailing:

> When the date that a right-to-sue notice was received is unknown or disputed, courts
> routinely presume that the notice was received either three days or five days after it
> was mailed. *Nkengfack v. Am. Ass'n of Retired Persons*, 818 F. Supp. 2d 178, 181
> (D.D.C. 2011); *Ruiz v. Vilsack*, 763 F. Supp. 2d at 171.  Receipt within three days is
> usually presumed, based on Rule 6(d) of the Federal Rules of Civil Procedure. *See*
> *Baldwin Cnty. Welcome Ctr. v. Brown*, 466 U.S. at 148 n. 1, 104 S. Ct. 1723 (stating
> that "presumed date of receipt" is three days after issuance of right-to-sue letter and
> citing Rule 6); *Smith–Haynie v. Dist. of Columbia*, 155 F.3d 575, 579 (D.C. Cir.
> 1998) (same, citing *Baldwin Cnty. Welcome Ctr. v. Brown*, 466 U.S. at 148 & n. 1,
> 104 S. Ct. 1723).  Courts have employed a more generous five-day presumption
> instead where particular circumstances made that presumption more reasonable. *See,*
> *e.g.*, *Nkengfack v. Am. Ass'n of Retired Persons*, 818 F. Supp. 2d at 181; *Ruiz v.*
> *Vilsack*, 763 F. Supp. 2d at 171; *Washington v. White*, 231 F. Supp. 2d 71, 75 (D.D.C.
> 2002).

*Mack v. WP Co., LLC*, 923 F. Supp. 2d 294, 299 (D.D.C. 2013) (some citations omitted).

Bartlette's EEOC right to sue letter was dated July 22, 2013, and therefore, Bartlette's

claim against Hyatt was timely only if he filed it by Wednesday October 23, 2013 (applying the

three-day presumption) or by Friday October 25, 2013 (applying the five-day presumption).

While Bartlette did file this lawsuit by October 25, 2013, the Complaint he filed on that day

contained no factual allegations involving himself or Hyatt and, therefore, did not stop the

running of the ninety-day clock because it did not put Hyatt on notice of the charges against it.

Pursuant to Federal Rule of Civil Procedure 8, a complaint must "give the defendant fair

notice of what the claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555, 556

(holding that the complaint must contain enough "factual matter" to suggest liability) (citation

and alterations omitted); Fed. R. Civ. P. 8(a) ("A pleading that states a claim for relief must

contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief. .

. .").  Without any factual allegations that might suggest that Hyatt was liable for any alleged

wrongs involving Bartlette, that <u>initial</u> Complaint—containing only factual allegations by Adams

against CDI completely unrelated to Bartlette's claims against Hyatt—did not meet the

requirements of Federal Rule 8.  Therefore, even though Bartlette filed the initial Complaint

within the ninety-day window (assuming application of the five day presumption), that

Complaint did not stop the running of the clock because it did not gave Hyatt fair notice of the

claims that were later included in the Corrected Complaint.  *See Garrett v. Structured Cabling*

*Sys.*, Civ. Action No. 10-55-DLB, 2010 WL 3862994, at *2 (E.D. Ky. Sept. 28, 2010) (finding

that claims against two of four defendants named in the original complaint were untimely where

the original complaint was filed within the ninety-day window, but contained no factual

allegations involving those two defendants); *Male v. Tops Friendly Mkts.*, No. 07-CV-6573,

2008 WL 1836948, at *3–4 (W.D.N.Y. Apr. 22, 2008) (dismissing plaintiff's claims because her

original timely complaint was devoid of any factual assertions and her amendment of the

complaint outside the ninety-day window to include factual assertions did not cure the failure).

However, as with any legal presumption, the three/five day receipt rule may be rebutted

"by sworn testimony or other admissible evidence from which it could reasonably be inferred

that it took longer" for the letter to arrive.  *Gardner v. Honest Weight Food Coop.*, 96 F. Supp.

2d 154, 158 (N.D.N.Y 2000) (citing *Sherlock v. Montefiore Med. Ctr.*, 84 F.3d 522, 526 (2d Cir.

1996)); *Legille v. Dann*, 544 F.2d 1, 5-6 (D.C. Cir. 1975) (where opponents offer admissible

evidence to contradict a rebuttable presumption, "the presumption disappears as a rule of law, and the case is in the factfinder's hands free from any rule.") (citations and alterations omitted).

In response to Hyatt's timeliness argument, Bartlette submitted a sworn affidavit stating that he received his EEOC notice of right to sue on July 29, 2013—seven days after it was mailed—and that he "immediately" called his attorney and delivered the letter to her that same day. (ECF No. 20, Pls. Notice of Filing at Ex. B). Consistent with Bartlette's affidavit, his attorney also submitted a sworn affidavit indicating that she received a call at her office from Bartlette on July 29, 2013, and he delivered the EEOC right to sue letter that same day. (*Id.*) Accordingly, for summary judgment purposes, this court will accept as true Bartlette's unrebutted claim that he received the notice of right to sue from the EEOC on July 29, 2013— seven days after it was mailed. *See Witt v. Roadway Express*, 136 F.3d 1424, 1429-30 (10th Cir. 1998) (lower court erred when it granted summary judgment for the defendant and ignored plaintiff's affidavit about the date he received his right to sue letter because the affidavit created a "credibility issue that must be resolved by the trier of fact"); *Rodriguez v. Chertoff*, 216 F. App'x. 1, 1 (D.C. Cir. 2006) (vacating dismissal of the complaint and noting that the "district court was obliged to accept as true that the 90-day period . . . began on the date that appellant alleges he received the right to sue notice.") (citations omitted). Given this July 29 receipt date, the court finds that Bartlette timely filed his Corrected Complaint, containing allegations against the Hyatt, within the ninety-day window. [11] Accordingly, dismissal pursuant to Rule 56 is not appropriate.

---

[11] Having received the notice of right to sue on July 29, Bartlette's complaint against Hyatt was due by October 27. However, October 27, 2013 was a Sunday, and therefore his Corrected

2.  **Title VII and ADEA Substantive Disparate Treatment and Hostile Work Environment Claims.**

Hyatt next argues that Bartlette has not set forth sufficient facts to support his disparate treatment and hostile work environment Title VII and ADEA claims.  In Title VII and ADEA cases alleging disparate treatment, a plaintiff establishes a *prima facie* case of discrimination by pleading facts from which it can reasonably be inferred that

> (1) he is a member of a protected class, (2) he suffered an adverse employment action, and (3) the unfavorable action gives rise to an inference of discrimination (that is, an inference that his employer took the action because of his membership in the protected class).  A plaintiff can raise an inference of discrimination by showing that [ ]he was treated differently from similarly situated employees who are not part of the protected class.

*Brown v. Sessoms*, 774 F.3d 1016, 1022 (D.C. Cir. 2014) (citations and internal quotations omitted).

Hostile work environment or "harassment" claims require a showing that the plaintiff "was subjected to 'discriminatory intimidation, ridicule, and insult' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Ayissi–Etoh v. Fannie Mae*, 712 F.3d 572, 577 (D.C. Cir. 2013) (citations omitted).  In evaluating harassment claims, courts look "to the totality of the circumstances, including the frequency of the discriminatory conduct, its severity, its offensiveness, and whether it interferes with an employee's work performance." *Baloch v. Kempthorne*, 550 F.3d 1191, 1201 (D.C. Cir. 2008) (citation omitted).

---

Complaint was still timely when he filed it on Monday October 28, 2013.  *See* Fed. R. Civ. P. 6(A)(1)(c)

While an employment discrimination plaintiff must "plead sufficient facts to show a plausible entitlement to relief," he is "not required to plead every fact necessary to establish a *prima facie* case of discrimination in order to survive a Rule 12(b)(6)  motion to dismiss." *Massaquoi v. District of Columbia*, 81 F. Supp. 3d 44, 49 (D.D.C. 2015) (alterations and quotations omitted) (quoting *Jones v. Air Line Pilots Ass'n*, 642 F.3d 1100, 1104 (D.C. Cir. 2011); *Rodriguez v. Donovan*, 922 F. Supp. 2d 11, 17 (D.D.C. 2013)).

Hyatt alleges that Bartlette has not proffered any facts that might indicate the challenged conduct or the harassment occurred because of his protected status.  The court disagrees. Although the Corrected Complaint is confusing, less than artfully pled, and disorganized, it sets forth sufficient facts to establish a *prima facie* case at this stage of the litigation.  Specifically, Bartlette (who is African American) alleges that: (1) he was required to train a younger Caucasian employee supervisor, and a dispute with this supervisor led to Bartlette's termination; (2) Hyatt considered Bartlette a good employee for over twenty years, but in year twenty-one, after complaining about discrimination, he began having employment problems; (3) Hyatt disciplined Bartlette through letters of warning, which were a pretext for discrimination; (4) he was falsely accused of threatening managers and committing sexual harassment; (5) his termination violated Hyatt's progressive discipline policy; (6) he and other older African American workers were disrespected, subjected to racially demeaning treatment and racial comments by Caucasian employees; and (7) he and other older African American employees reported the harassment, but Hyatt failed to take corrective action.  (Corrected Compl. ¶¶ 6-7, 16, 18, 20, 23-26, 28, 38, 39, 45).

These factual allegations present "more than labels . . . [or] a formulaic recitation of the elements of a cause of action." *Brown*, 774 F.3d at 1020 (D.C. Cir. 2014) (citing *Twombly*, 550 U.S. at 555)).  Specifically, Bartlette alleges that Hyatt disciplined him and otherwise treated him unfavorably because of his race and age.  The facts alleged are sufficient to support a *prima facie* case of discrimination.

Likewise, he asserts enough facts to support a hostile work environment claim: he alleges that he and older African American workers were subjected to racially demeaning treatment, including derogatory racial comments, and that this treatment was ongoing; that Hyatt denied him both disability and non-disability breaks; that he was subjected to unwarranted discipline; that he was falsely accused of sexual harassment, and that he experienced an "ongoing pattern of harassment."  A reasonable fact-finder could determine that such conduct was "'sufficiently severe or pervasive to alter the conditions of the [Bartlette's] employment and create an abusive working environment.'"  *See Ayissi–Etoh,* 712 F.3d at 577 (citations omitted);  *Baloch*, 550 F.3d at 1201.   However, while Bartlette has alleged facts sufficient to support his age and race disparate treatment and hostile work environment claims, for the reasons set forth below, the court will dismiss some of his claims because he failed to exhaust his administrative remedies.

### 3.  Title VII and ADEA Retaliation Claims

Hyatt next argues that Bartlette has not pled sufficient facts to support his race and age based retaliation claims because: (1) he failed to "provide the temporal proximity" between the protected activity and the alleged retaliatory conduct; and (2) he failed to establish a causal link between the supervisors about whom he complained and the supervisors who retaliated against him.  (Defs. Br. at 10).  These arguments are unpersuasive at this initial pleading stage.

Temporal proximity is not required to state a retaliation claim, as it "neither demonstrates causality conclusively, nor eliminates it conclusively." *Bryant v. Pepco*, 730 F. Supp. 2d 25, 32 (D.D.C. 2010) (citations and alterations omitted).  It is sufficient at this stage of the proceedings for a plaintiff to plead causation "simply by alleging that the adverse actions were caused by his protected activity." *Id.*

Here, Bartlette alleges that Hyatt began to harass him as a result of his protected activity. For example, he claims that Hyatt "never suspended [him] and never disciplined [him] for abuse of leave," in his first twenty years with the company, but in "year twenty-one [he] started to have trouble when he began to complain about the discriminatory and abusive treatment that he and other employees were being subjected [to] by the supervisors."  (Corrected Compl. ¶ 28).  This allegation is sufficient to show a causal link between Bartlette's protected activity and the challenged conduct.

Hyatt's second causation argument—that Bartlette's Complaint is deficient because it does not allege that the supervisors involved in the discrimination complaints were the same supervisors who engaged in the retaliatory conduct—also fails because the law does not require such a showing.  To satisfy the causation element for a *prima facie* case of retaliation, Bartlette need only plead facts that "permit an inference of retaliatory motive."  *See Jones v. Bernanke*, 557 F.3d 670, 679 (D.C. Cir. 2009).  He has met this standard by alleging, *inter alia*, that Hyatt only began to discipline him once he complained about discriminatory treatment.  Accordingly, Bartlette has established a *prima facie* case for race and age based retaliation.

### 4.   Failure to Exhaust

Hyatt next argues that Bartlette failed to exhaust his administrative remedies as to some of his Title VII, ADEA and ADA claims.   The law "requires that a person complaining of a violation file an administrative charge with the EEOC and allow the agency time to act on the charge."  *Park v. Howard Univ.*, 71 F.3d 904, 907 (D.C. Cir. 1995).  A plaintiff may bring a lawsuit after filing an EEOC charge only for "claims that are 'like or reasonably related to the allegations of the charge and growing out of such allegations.'"  *Id.* (citing *Cheek v. Western and Southern Life Ins. Co.*, 31 F.3d 497, 500 (7th Cir. 1994)).

In his EEOC charge, Bartlette "checked the box" for race, age, disability, hostile work environment, and retaliation.  (ECF No. 13, Defs. Ex. A).  His charge, however, is short on details with respect to some of his claims:

> On July, 1989 I was hired by the respondent to work as an Assistant Server in the Food & Beverage Department.  I have disabilities under the ADA which substantially limit major life activities. From April of 2009 until September of 2011, I was subjected to an ongoing pattern of harassment such as being unreasonably denied both disability-related breaks and breaks unrelated to my disabilities and being threatened with termination.  I was further harassed within this time frame by being falsely accused of threatening managers, and committing sexual harassment.  Finally, on September 14, 2012, I was falsely accused of yelling at Avery Fenton, the Assistant Manager, in violation of the respondent's progressive discipline policy. I believe that I was replaced by a younger individual of a different race.
>
> I believe that I have been discriminated against based upon my race, Black, in violation of Title VII of the Civil Rights Act of 1964, as amended. I believe that I have been discriminated against based upon my age, 55, in violation of the Age Discrimination in Employment Act of 1967, as amended. I believe that I have been discriminated against based upon my disabilities in violation of the Americans with Disabilities Act of 1990, as amended.  I believe that I have been subjected to a Hostile Work Environment And Retaliated Against.

(*Id*).

a.   Disparate Impact Claims

Although Bartlette did not include a separate count in his Corrected Complaint alleging disparate impact, he does allege that Hyatt disproportionately terminated employees who were over age forty.  (Corrected Compl. ¶¶ 43, 47).  More importantly, he cites to the Title VII provision that provides relief for disparate impact claims.  (Corrected Compl. ¶ 43); *see* 42 U.S.C. § 2000e-2(k).  However, to the extent Bartlette seeks to pursue such claims, the court finds that they are not "like or reasonably related to" the claims in his EEOC charge.

Plaintiffs may "bring disparate-impact suits when a facially neutral policy has a disproportionate impact on a protected class."  *Ayissi-Etoh v. Fannie Mae*, 712 F.3d 572, 576 (D.C. Cir. 2013) (citing *See General Building Contractors Assn., Inc. v. Pennsylvania*, 458 U.S. 375, 387 (1982)).  Bartlette alleges in his EEOC charge that Hyatt treated him worse than others because of his protected status.  He does not allege, or even imply, that Hyatt maintained facially neutral policies that disproportionately impacted employees based on protected status. Therefore, as regards his disparate impact claims, he has not exhausted his administrative remedies, and the court will grant Hyatt's motion to dismiss those claims.

b.   Disparate Treatment Claims

Hyatt also argues that Bartlette failed to exhaust his administrative remedies with respect to some of the discrete acts of disparate treatment raised in his Corrected Complaint.  In his EEOC charge, Bartlette specifically alleged that he was treated less favorably than those outside his protected class when Hyatt:

1.   denied him disability breaks;

2.   denied him non-disability related breaks;

3.  threatened him with termination;

4.  falsely accused him of threatening managers, committing sexual harassment, and yelling at his manager; and

5.  discharged him in violation of the company's progressive discipline policy and replaced him with a younger individual of a different race.

(ECF No. 13, Defs. Ex. A).

Because these discrete events were the only incidents Bartlette included in his EEOC charge, he cannot go forward with allegations that are not "like or related to" these acts, such as Hyatt's decision to have a security officer escort him out of the building upon termination.  *See Coleman-Adebayo v. Leavitt*, 326 F. Supp. 2d 132, 137-38 (D.D.C. 2004) ("'Discrete acts such as termination, failure to promote, denial of transfer, or refusal to hire' are individual acts that 'occur' at a fixed time.  Accordingly, plaintiffs alleging such discriminatory action must exhaust the administrative process regardless of any relationship that may exist between those discrete claims and any others.") (quoting *Nat'l R.R. Passenger Corp. v. Morgan,* 536 U.S. 101, 114 (2002)).  In this case, however, it is not clear to the court the extent to which some of the facts in the Corrected Complaint actually form the basis of Bartlette's disparate treatment claims, or whether they instead provide evidentiary support for other claims.  "[E]vents that are themselves incapable of sustaining a discrimination claim can serve as evidence in support of another, valid claim."  *Henry v. Wyeth Pharmaceuticals, Inc.,* 2007 WL 4526525, *4 n. 4 (S.D.N.Y. 2007) (citing *Morgan,* 536 U.S. at 113).  The parameters of the disparate treatment claims Bartlette plans to pursue should become more evident during the discovery process.  Once that process concludes, Hyatt may raise this issue again by way of dispositive motion, but at this stage, the court will deny Hyatt's motion to dismiss for failure to exhaust the disparate treatment claims.

c.  Hostile Work Environment Claims

The court agrees with Hyatt that Bartlette failed to exhaust some of his hostile work

environment claims.  In his EEOC charge, Bartlette alleged that he was "subjected to an ongoing

pattern of harassment such as . . . ," and he described several incidents of alleged harassment: (1)

denial of disability and non-disability related breaks; (2) threats of termination; (3) false

accusations about yelling at and threatening managers, as well as committing sexual harassment,

and (4) termination in violation of the Hyatt's disciplinary policy.  (ECF No. 13, Defs. Ex. A).

His Corrected Complaint, however, contains additional allegations of harassment not included in

his EEOC charge; specifically, he alleges that he and other older African American workers were

demeaned and subjected to racial comments by Caucasian employees.  (Corrected Compl. ¶¶ 20,

38.)

These allegations are not actionable here because they go beyond the scope of Bartlette's

EEOC charge, which is devoid of any mention of a hostile work environment that included

racially charged comments or race/age based demeaning behavior.  As our Circuit has

recognized, the EEOC "administrative charge requirement serves the important purposes of

giving the charged party notice of the claim and narrowing the issues for prompt adjudication

and decision." *Park,* 71 F.3d at 907 (citations and alterations omitted).  Accordingly, at the very

least, the claims in the complaint must arise from "the administrative investigation that can

reasonably be expected to follow the charge of discrimination." *Id.* (citations omitted).  An

EEOC investigation into racial comments and race/age based demeaning treatment could not

have reasonably been expected to develop from the allegations in Bartlette's EEOC charge,

which simply contained factual assertions regarding denial of breaks, false accusations of

misconduct, and termination. *Contra Bailey v. Unocal Corp.*, 700 F. Supp. 396, 398 (N.D. Ill. 1988) (finding plaintiff exhausted her administrative remedies with respect to the allegation that a supervisor exposed himself to her, because even though plaintiff's EEOC charge did not include this allegation, the plaintiff alleged in her charge that her supervisor had made advances toward her); *Gamble v. Birmingham S. R. Co.*, 514 F.2d 678, 688-89 (5th Cir. 1975) (allegations in the complaint regarding failure to promote to supervisor were "the same type and character" as the allegations in the EEOC charge regarding failure to promote to conductor because supervisors were chosen from the ranks of the conductors").

It is true, that the law does not mandate inclusion of every incident of harassment in a claimant's EEOC charge because the "very nature [of such claims] involves repeated conduct." *Burkes v. Holder*, 953 F. Supp. 2d 167, 173 (D.D.C. 2013) (alterations omitted) (citing *Morgan*, 536 U.S. at 115, 117). Thus, a discrimination plaintiff is not required to amend or file a new EEOC charge every time a new incident of harassment occurs. Bartlette's use of the phrase "such as" in his EEOC charge indicates that he provided some examples of harassing conduct, but he did not include an exhaustive list.

Nonetheless, there is no logical relationship between the conduct he mentions in his EEOC charge and the alleged harassment in the form of racial comments and race/age based demeaning treatment he mentions in his Corrected Complaint.

> A vague or circumscribed EEOC charge will not satisfy the exhaustion requirement for claims it does not fairly embrace. Allowing a complaint to encompass allegations outside the ambit of the predicate EEOC charge would circumvent the EEOC's investigatory and conciliatory role, as well as deprive the charged party of notice of the charge, as surely as would an initial failure to file a timely EEOC charge.

*Marshall v. Fed. Exp. Corp.*, 130 F.3d 1095, 1098 (D.C. Cir. 1997) (citations and alterations

omitted).  By failing to include these or similar allegations in his charge, Bartlette deprived Hyatt

of notice and deprived the EEOC of the opportunity to investigate.  Accordingly, the court will

grant Hyatt's motion to dismiss with respect to the allegations concerning racial comments and

demeaning behavior, for failure to exhaust.[12]

Even though Bartlette may not rely on these allegations to support his hostile work

environment claim, the court finds that he may still go forward with his claim.  Although his

racial comment/demeaning behavior allegations are not actionable, the court can envision a

scenario where constant false accusations of misconduct, particularly those involving allegations

of sexual harassment, constant denial of breaks for a food server—particularly one with a prior

back condition that required surgery—and constant unwarranted disciplinary actions might be

sufficiently severe and pervasive to constitute a hostile working environment.  While Bartlette

faces an uphill battle on this claim, the court will deny Hyatt's motion to dismiss Bartlette's

hostile work environment claim.

d.  <u>Race and Age Retaliation Claims</u>

While Bartlette pled facts sufficient to establish a *prima facie case* for race and age based

retaliation, these claims are not actionable because he failed to exhaust his administrative

---

[12]   To the extent Bartlette intended to seek relief for disparate treatment based on the racial comments/demeaning treatment, those claims will likewise be dismissed for failure to exhaust.

As with Bartlette's disparate treatment claim, it is unclear from his Complaint whether some of the allegations form the basis of his hostile work environment claim or simply provide evidentiary support of discriminatory animus.  Once this issue is clarified during discovery, Hyatt may seek summary judgment as appropriate for failure to exhaust.  In the event summary judgment on this issue becomes necessary, Hyatt shall separate its exhaustion argument into each applicable protected category—race, age, disability—rather than cobbling the arguments together as if the facts for one protected category necessarily apply to all three.

remedies.  Although Bartlette "checked the box" for retaliation in his EEOC charge, he did not

allege in the charge (as he does in his Corrected Complaint) that Hyatt began treating him poorly

after he complained of discrimination, nor did he allege any other facts relating to race and age

based retaliation.  Rather, he alleged that he was <u>disabled</u> and that Hyatt: (1) mistreated him by

denying him both <u>disability</u> and non-disability breaks; (2) threatened to terminate him and falsely

accused him of misconduct; and (3) terminated him and replaced him with a younger individual

of a different race.  He then asserted—without reference to any facts—that he was "retaliated

against."

Thus, he failed to allege any specific facts relating to race or age based retaliation and,

the only protected activity Bartlette mentioned was his request for disability breaks.  *See Floyd v.*

*Lee*, 968 F. Supp. 2d 308, 333 (D.D.C. 2013) (finding that requesting an accommodation for a

qualified disability constitutes engaging in protected activity).  Neither Hyatt nor the EEOC

would have been on notice that Bartlette was alleging retaliation based on race or age when the

only allegations regarding protected activity in his EEOC charge pertained to his disability.  In

light of this, the court will grant Hyatt's motion to dismiss Bartlette's race and age related

retaliation claims for failure to exhaust.

### 5.  Wrongful Discharge and ADA Claims

Hyatt next challenges Bartlette's "Wrongful Discharge" claim.  While Bartlette purports

to bring such a claim in Count I, he does not cite any legal basis for this claim.  Instead, he

simply repeats certain factual claims relating to required overtime work, Hyatt's failure to allow

him to take breaks, its failure to accommodate his disability and, ultimately, his termination.

(Corrected Compl. ¶¶ 30-37).  He concludes by alleging that he was terminated in violation of

"public policy and the Individuals with Disabilities Act." (*Id.* ¶ 36). This cryptic description is confusing because there is no "Individuals with Disabilities Act." There is an Individuals with Disabilities Education Act, which is a statute with the primary goal of "[i]mproving educational results for children with disabilities." 20 U.S.C. § 1400 *et seq.* And there is the Americans with Disabilities Act (ADA), which was enacted "to assure equality of opportunity, full participation, independent living, and economic self-sufficiency for" persons with disabilities. *Smith-Berch, Inc. v. Baltimore Cty., Md.*, 68 F. Supp. 2d 602, 617 (D. Md. 1999) (citing 42 U.S.C. § 12101(a)(8)). But, while Bartlette sprinkles his Corrected Complaint with a few references to the ADA, he does not specifically include a count for violation of the ADA. Accordingly, to the extent Bartlette seeks relief for violations of the ADA, the court will permit him to amend his Corrected Complaint so that it clearly and unequivocally sets forth allegations and claims supporting such relief. [13]

To the extent Bartlette attempts to assert a District of Columbia common law claim for wrongful termination in violation of public policy, his claim fails. In his opposition brief, Bartlette conceded that the District of Columbia Court of Appeals has carved out a "very narrow exception" to the employment-at-will doctrine. (ECF No. 17, Pls. Response at 9-10). Yet, he insists he can bring a wrongful discharge claim under District of Columbia law because he exercised his "right to be free from discrimination" when he complained of discriminatory treatment. (*Id.* at 10).

---

[13] Bartlette may amend his complaint solely to add a count under the Americans with Disabilities Act and set forth the specific facts supporting this claim. Additionally, should he choose to amend, he must specifically state whether he asserts disparate treatment claims under the ADA, reasonable accommodation claims, and/or retaliation claims, and identify the specific facts which support each type of claim.

Bartlette's position on this issue is without merit because the District of Columbia Court of Appeals has specifically rejected the argument that plaintiffs with viable statutory employment discrimination claims may, as an alternative cause of action, seek relief under the public policy exception to the employment-at-will doctrine.  *See McManus v. MCI Comm'ns Corp.*, 748 A.2d 949, 957 (D.C. 2000) (refusing to recognize a public policy exception to the employment-at-will doctrine where plaintiff had a remedy for her employment discrimination claims under the District of Columbia Human Rights statute); *Carter v. District of Columbia*, 980 A.2d 1217, 1226 n. 28 (D.C. 2009) ("there is no need to consider exception to at-will employment where [the] statute allegedly violated is explicit and may apply directly to [the] employer's alleged wrongful discharge") (quotations and alterations omitted) (citing *Freas v. Archer Serv., Inc.*, 716 A.2d 998, 1002 (D.C. 1998)).  Accordingly, the court will dismiss Bartlette's District of Columbia common law wrongful termination claim.

### 6.  FLSA Claim

In the damages section of the Corrected Complaint, Bartlette alleges that Hyatt's conduct was an "intentional and willful violation of . . . FLSA."  (Corrected Compl. at p. 17).  Additionally, in the Corrected Complaint's "preliminary statement," Bartlette indicates that his lawsuit is an action for unlawful "discrimination . . . including incorporated provisions of the Fair Labor Standards Act (FLSA)."  (Corrected Compl. at p. 1).  But Bartlette does not indicate the connection between Hyatt's allegedly unlawful conduct and the FLSA.  Moreover, the Corrected Complaint contains no allegations that appear to support a FLSA claim.  Rather, Bartlette simply alleges that he was required to work overtime and that, on occasion, he was required to do so without a break.  (*Id.* ¶ 12).  He also alleges that he was "unreasonably denied

both disability related breaks and breaks unrelated to his disability." (*Id*. ¶¶ 24, 53).   Nowhere in

his Corrected Complaint, however, does he indicate that his overtime work or the denial of

breaks were in violation of FLSA, nor does he cite to any specific provisions of the statute.

Moreover, none of the five counts in his Corrected Complaint contain any references to FLSA.

Accordingly, to the extent Bartlette asserts claims for violations of FLSA, those claims will be

dismissed without prejudice.

### 7.   Untimely Service of Process

Finally, Hyatt asks the court to dismiss this lawsuit under Federal Rule of Civil Procedure

12(b)(5) for insufficient service of process because Bartlette did not effectuate service until more

than 160 days after he filed the Corrected Complaint.   (ECF No. 28, Def. Suppl. Br. at 2).   "[T]he

party on whose behalf service is made has the burden of establishing its validity when

challenged; to do so, he must demonstrate that the procedure employed satisfied the requirements

of the relevant portions of Rule 4 and any other applicable provision of law [regarding service of

process]."   *Light v. Wolf*, 816 F.2d 746, 751 (D.C.Cir.1987) (internal quotations omitted).

With respect to timeliness, the version of Rule 4 that was applicable at the time Bartlette

filed his Complaint provides:

> If a defendant is not served within 120 days after the complaint is filed, the court—on
> motion or on its own after notice to the plaintiff—must dismiss the action without
> prejudice against that defendant or order that service be made within a specified time.
> But if the plaintiff shows good cause for the failure, the court must extend the time for
> service for an appropriate period. . . .

Fed. R. Civ. P. 4(m).

Hyatt argues that Bartlette has not met this standard, noting that Bartlette's counsel

effectuated service 160 days after she filed the Corrected Complaint, and only after this court

issued two orders to show cause and granted counsel several extensions.  Moreover, Hyatt

argues, the reasons for the delays do not establish "good cause."  Bartlette's counsel requested

extensions of time in which to effectuate service because: (i) she received the EEOC charge

much sooner than expected and was forced to draft the complaint during a time in which her

workload was heavy; (ii) she had the wrong address for Defendant's registered agent; and (iii)

she had a personal emergency.  (*See* ECF No. 6).  Hyatt points out that this was not the first time

Bartlette's counsel was unable to meet court deadlines; a Judge of this court dismissed one of

counsel's cases after she repeatedly failed to meet court deadlines.  *See Maupin v. U.S. Dep't of

Energy*, No. Civ. A. 03-1156 (PLF), 2005 WL 3211883, at *1 (D.D.C. Nov. 18, 2005)

(dismissing case after plaintiff failed to meet a single original filing deadline and failed to

respond to defendants' motions to dismiss, even after the court issued show cause orders and

granted her extensions of time in which to respond).  Finally, Hyatt argues it will be prejudiced

by having to defend this lawsuit should the court fail to dismiss this case as a sanction.

The court concludes that, despite Plaintiff's counsel's dilatory performance in

effectuating service, dismissal is not appropriate here.  As our Circuit has recognized, "[t]he

Advisory Committee note for Rule 4(m) instructs that the district court has discretion to extend

the time for effecting and filing proof of service <u>even if the plaintiff fails to show 'good cause</u>.'"

*Mann v. Castiel*, 681 F.3d 368, 375 (D.C. Cir. 2012) (emphasis added).  Indeed, the Advisory

Committee Note specifically indicates that allowing additional time for service "may be justified

. . . if the applicable statute of limitations would bar the refiled action."  Fed. R. Civ. P. 4,

Advisory Comm. Note to 1993 Amendments.  Such is the case here.

On the other hand, the court is deeply troubled by the failure of Bartlette's attorney to adhere to the Federal Rules of Civil Procedure and court imposed deadlines.  As such, she should be mindful that the court will view future requests for extensions with disfavor.  Moreover, any future failure to comply with deadlines or court orders may result in sanctions, up to and including dismissal of this action, and/or referral of counsel to the bar of this court for possible discipline.[14]

## D.  CONCLUSION

Viewing the facts in the light most favorable to Bartlette, the court finds that his Corrected Complaint was timely.  Moreover, Bartlette has alleged sufficient facts to support a claim for disparate treatment based on race and age, as well as a claim for hostile work environment.  On the other hand, Bartlette failed to exhaust his administrative remedies with respect to the following claims and, therefore, the court will grant Hyatt's motion to dismiss them:

- Disparate impact

- Age and race based retaliation

- Claims based on racial comments and race/age-based demeaning behavior

The court will also grant, with prejudice, Hyatt's motion to dismiss Bartlette's claim for wrongful discharge in violation of public policy because it is not actionable under the facts alleged in the Corrected Complaint.  Finally, Bartlette's FLSA claims are also unsupported by

---

[14]  The Court also notes that, more often than not, Bartlette's counsel failed to cite to the record in her papers opposing dismissal of this action.  Going forward, counsel should be aware that the court may *sua sponte* strike any filings that do not contain citations to the record and/or treat as conceded any issue to which counsel is responding.

the facts alleged in his Corrected Complaint and, therefore, the court will grant Hyatt's motion to dismiss these claims.

Date:  September 25, 2016

*Tanya S. Chutkan*
TANYA S. CHUTKAN
United States District Judge